CLERKS OFFICE US DISTRICT COURT
AT HARRISONBURG, VA
FILED
11/05/2026
LAURA A. AUSTIN, CLERK
BY: /s/ Amy Fansler
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Action: 5:23-cr-00013 |
| | ) | |
| VALERIE BURNS PERFECT-HAYES, | ) | By: Elizabeth K. Dillon |
| GARY BLAKE REBURN, and | ) | Chief United States District Judge |
| JENNIFER LYNN AMNOTT | ) | |

## MEMORANDUM OPINION AND ORDER

In this criminal case, one of the three defendants, Jennifer Lynn Amnott, has pled guilty. The criminal trial for the other two defendants and alleged co-conspirators, Valerie Burns Perfect-Hayes (Hayes) and Gary Blake Reburn (Reburn), is set to begin on February 1, 2026, and to last about four weeks. Each defendant has filed a separate motion to sever their joint trial (Dkt. No. 151 (Hayes motion); Dkt. No. 114 (Reburn motion)), which the United States opposes (Dkt. No. 159 (Opp'n to Hayes); Dkt. No. 124 (Opp'n to Reburn)[1].) The motions are fully briefed and were argued before the court. For the reasons discussed below, the motions will be granted, and the court will order that the defendants be tried separately. The court will keep the trial for Hayes set for February 1, 2026, and it will hold Reburn's trial at the earliest possible opportunity thereafter.

## I. BACKGROUND

The indictment in this case contains sixteen counts, and all three defendants are named in all counts. According to the allegations in the indictment, the defendants conspired to kidnap

[1] The United States first opposed Reburn's motion to sever solely on the grounds that it was not timely under the court's pretrial order. (Dkt. No. 117.) But the court would have to address a severance motion raised at trial if the grounds were sufficient, and it prefers to resolve such a motion as soon as possible. And Hayes notes that the grounds for her motion did not become known to her until Reburn indicated his defenses and intent to use certain evidence. Thus, the court will not deny either motion or refuse to consider them on the grounds that they are untimely.

five children from two separate families in a Mennonite community in Dayton, Virginia. Count One charges defendants with conspiracy to kidnap, in violation of 18 U.S.C. § 1201(a)(1) and (c). As one of the listed overt acts, the indictment alleges that Hayes, Reburn, and a third co-conspirator, Frank Amnott (who is charged in a separate indictment) entered the home of Family 1 "to take Child 1 and Child 2 and kill Parent 1 and Parent 2." (Indictment ¶ 13(d)). It further alleges that Reburn and Frank Amnott pointed a firearm at Parent 1, directed Parent 1 to the basement of his home, and bound Parent 1's wrists with zip ties. (*Id.* ¶ 13(e).) Count Three charges the kidnapping of Parent 1, and Counts Four through Eight each charge the attempted kidnapping of one of the five children. (*Id.* at 5–9.)

Count Two charges defendants with conspiring to kill witnesses, in violation of 18 U.S.C. § 1512(a)(1)(C) and (k). Counts Nine through Twelve each charge the attempted killing of one of the four parents. (*Id.* at 9–10.) Counts Thirteen through Sixteen charge a violation of 18 U.S.C. § 924(c), specifically possession and brandishing of a firearm in furtherance of a crime of violence and use of a firearm during and in relation to a crime of violence, with each count referring to the attempted killing of one of the parents as the underlying crime of violence. (*Id.* at 10–13.)

Through the briefing on the motions to sever and other briefing in the case, Reburn has presented his view of the case and disclosed a good deal of his defense strategy. He identifies Hayes as the alleged leader of both conspiracies, and states that she planned them and recruited the other co-conspirators. According to Reburn, he and Hayes were romantic partners at some point and Hayes recruited him very late in the conspiracy. Reburn advises that his primary defense strategy at trial will be to paint Hayes as a person who lied and manipulated him and the other co-conspirators, convincing them to participate under mistaken beliefs. He states that

Hayes "engaged in a sustained course of fabrication that created the factual premises in which he believed." (Dkt. No. 145, at 6.) In particular, "Hayes convinced Reburn that they had children together over a period of years, that those children had been previously kidnapped, that she was involved in secret government and child-rescue activity, and that Hayes'[s] plans (according to her) on July 28 and 29, [2018], had been to retrieve their mutual children and never to kidnap children belonging to others." (*Id.*) After the events of July 2018, she "induced Reburn . . . to support a false account of her whereabouts," and she also "took steps to set Reburn up as a prominent player in her alleged plot while enlisting his help to distance herself from the very same plot." (*Id.*) He alleges that he discovered—long after the events giving rise to the offenses—that she has a long history of lying and manipulating persons and a history of attempting to frame husbands or other romantic partners for crimes they did not commit. He also states that much of the evidence he wants admitted supporting this narrative is necessary to show the jury, among other things "why Reburn accepted propositions that may otherwise appear implausible . . . ." (*Id.*) He claims that much of the evidence of past similar acts by her is necessary to help the jury understand that his "gullibility" was not "contrived" and to find that he actually believed the bizarre things Hayes told him. (*Id.* at 7.)

The parties are familiar with the evidence Reburn states he intends to introduce if permitted, and the court will not rehash it all here. It is set forth in part in his motion to sever and reply in support of the same (Dkt. Nos. 114, 133), and he details it further in his motion in limine "to admit character evidence and evidence of prior acts" of Hayes, (Dkt. No. 145). In general terms, he seeks to introduce evidence concerning Hayes's character for untruthfulness and her "pattern of attempting to set up and falsely accuse her romantic partners with crimes." (*Id.* at 1.)

He contends that she repeatedly engaged in intricate and complex deceptions, including:

- faking pregnancies (complete with the use of a fake pregnancy prosthetic) to deceive him into believing that she and he had multiple children together;
- falsely telling multiple people that her ex-husband and she are government operatives;
- texting from cell phones pretending to be an individual who did not, in fact, exist; and
- telling multiple people that she was using a body double, "Madeline," and then posing as Madeline herself.

(*See generally* Dkt. No. 145.)

The court does not conclude at this juncture that all (or even most) of this evidence is necessarily admissible, even if Reburn were tried by himself.[2] But some of it will be admitted, and much of it is evidence that is central to his defense of being manipulated by Hayes and set up by her to be an unwitting participant in the charged crimes. And nearly all of it is evidence that would be prejudicial to Hayes if she and Reburn were tried jointly and it were admitted at trial against her.

## II. ANALYSIS

### A. Defendants' Arguments for Severance

In his motion to sever, Reburn focuses on two bases that he says support severance. First, he asserts that there is considerable evidence that will be introduced through the Amnotts and others (including numerous co-conspirator statements) that lays out a comprehensive plan, scope, and purpose of the charged conspiracies. And he contends that the jury must use that evidence to determine Hayes's guilt while simultaneously refusing to let it fill the gaps in the case against him, which he claims is based on one day of involvement. (Reburn Mot. to Sever 6,

[2] That is the subject of one of Reburn's pending motions (Dkt. No. 145), to which the United States and Hayes have not yet responded.

Dkt. No. 114). He states that his much more limited participation, in which he did not know many details of the plan, will be introduced against both defendants, and it would require the jurors to "disregard Hayes's words on the very issues—knowledge, agreement, and intent—for which the Government's direct evidence against Reburn is most limited." (*Id.* at 6.) He refers to this generally as the problem of "spillover evidence." (*Id.* at 4, 6.)

Reburn's second broad basis for severance is that evidence crucial to his defense that he intends to introduce would severely prejudice Hayes, because his whole theory requires that he show that she manipulated him and convinced him of lies to induce him to participate in the conspiracies. (*Id.* at 7–10.) Indeed, this is a theme that his counsel has echoed repeatedly in arguments on pretrial motions concerning admissibility of certain evidence. Reburn suggests, and the court agrees, that for his defense to be successful, the jury must conclude that Hayes was the person who planned the conspiracies and that she convinced him to join by lying to and manipulating him. It is hard to see how jury could simultaneously believe Reburn's defense *and* find Hayes not guilty.

For her part, Hayes has not clearly identified what her defense or defenses will be, although she is entitled simply to require the government to meet its burden of proving that she committed the crimes, without ever testifying or putting on her own evidence. Hayes insists that some of Reburn's later filings, particularly his motion in limine to admit evidence about her, (Dkt. No. 145), make it plain that he intends to try to introduce significantly prejudicial information about her that would not be admissible in a trial against her without him as a co-defendant. She further argues that he would effectively become a "second prosecutor" at trial, pointing out the obvious prejudice this would cause her. (Hayes Mot. to Sever 4–5, Dkt. No. 151 (discussing Justice Stevens's concurrence in *Zafiro v. United States*, 506 U.S. 534, 543–44

(1993)).) At argument, Hayes's counsel expressed concern over the court's ability to balance preventing undue prejudice to her while still allowing Reburn to put on his complete defense.

**B. Severance Is Appropriate Here**

As the government correctly notes, the default rule for joinder is that defendants indicted together are tried together, and that presumption is stronger where the indictment alleges a conspiracy. *See Richardson v. Marsh*, 481 U.S. 200, 209–10 (1987) (noting the preference in the federal system for joint trials of defendants indicted together, because they promote efficiency and "serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts").

Despite the preference for joint trials, and the obvious judicial efficiencies that joint trials usually serve, the court has a duty to ensure that every defendant receives a fair trial. *See United States v. Austin*, No. 7:24-CR-00019, 2025 WL 289680, at *4 (W.D. Va. Jan. 24, 2025) (severing trials despite inconvenience and additional effort of separate trials because "our Government is not one of mere convenience or efficiency") (quoting *Kotteakos v. United States*, 328 U.S. 750, 773 (1946)). And if the "joinder of . . . defendants in an indictment, and information or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials for counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). Because the court concludes that a joint trial here would prejudice defendants, it will sever the trials.

All parties cite to *Zafiro v. United States*, 506 U.S. 534 (1993), as setting forth the relevant standard. *Zafiro* directs that severance is permitted "if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence." 506 U.S. at 539. *Zafiro* rejected the notion that the mere existence of conflicting or mutually antagonistic defenses required

severance. It noted instead that "the risk of prejudice will vary with the facts in each case" and emphasized the district court's sound discretion to determine that risk in the case before it. *Id.* The Court added that the requisite "serious risk" of prejudice might occur "when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant." *Id.*

Turning to the defendants' grounds for severance, the court discusses first Reburn's contention that "spillover evidence" introduced against Hayes would prejudice him. The court does not find that the possibility of "spillover" evidence alone requires severance. Although it could lead to some prejudice, the court believes that the admissibility of co-conspirator statements could be determined before trial and that limiting instructions would likely be sufficient to prevent an unfair trial, if that were the only issue arising from a joint trial. *See Zafiro*, 506 U.S. at 539 (pointing out that limiting instructions often cure the risk of prejudice from joint trials). The more troubling concern to the court is the antagonistic defenses.

The United States reasons that the court cannot conclude that the defendants have "mutually antagonistic defenses" without more information from Hayes as to what her defense is. (Gov't Opp'n to Hayes Mot. to Sever 5–6, Dkt. No. 159.) It thus argues that it would be purely speculative to even conclude that the defenses are antagonistic. That may be true in some cases. But on the facts of this case, that is not accurate. Even if Hayes simply put the government to its burden at trial and offered no evidence, it is impossible for the court to see how evidence offered in Reburn's defense would not significantly prejudice her.

Stated differently, whether mutually antagonistic or not, Reburn's defense presents a serious risk of prejudice as described in *Zafiro*, regardless of Hayes's defense. As Reburn explains in his motion to sever:

> Mr. Reburn will not merely suggest that Ms. Hayes was more culpable or point to gaps in the Government's proof. He will assert that she fabricated a shared family, misrepresented her entire persona, and positioned him to bear criminal responsibility for her plan. Acceptance of that defense necessarily establishes that Ms. Hayes deliberately deceived and framed him; it therefore forecloses her acquittal on any merits defense consistent with innocence. . . . Under the defense Mr. Reburn will actually present, there is no rational path to simultaneous acquittals.

(Reburn Reply in Support of Mot. to Sever 2–3, Dkt. No. 133.) And as described in discussing the proposed evidence above, some of that evidence would paint Hayes in an incredibly negative light. It is difficult to see a path for the jury to both believe Reburn's defense and find that Hayes did not plan, orchestrate, and carry out the crimes.

The United States suggests that the court can provide limiting instructions to cure any risk of prejudice. The *Zafiro* Court noted that limiting or curative instructions can serve as a remedy in lieu of severance in some circumstances. 506 U.S. at 539. And in a typical case of mere finger-pointing, or where there is some limited evidence that is prejudicial against one defendant but necessary to the defense of the other, the court would agree. But here, as already explained, Reburn's defense goes beyond finger-pointing. It will require a sustained effort to undermine Hayes and to portray her as a person who manipulated him by engaging in a complex scheme of deceit and lies, and it will also include proof that she planned and orchestrated the schemes. Because Reburn's defense will be so harmful to Hayes, the court sees no possibility that limiting instructions could realistically ensure that both defendants receive a fair trial. But severance can.

The United States also insists that the "second prosecutor" theory relied on by Hayes is a pre-*Zafiro* concept and notes that the majority in *Zafiro* did not adopt that rationale. (Gov't Opp'n to Hayes Mot. Sever 9–10, Dkt. No. 159.) And it is true that many post-*Zafiro* cases do

not discuss the rationale and that it appeared only in the concurrence in *Zafiro*. (*See id.* (collecting authority).) But it was addressed in a recent, post-*Zafiro* case cited in the United States' brief and by Hayes in her argument, *United States v. White*, No. 25-CR-150 (TSC), 2026 WL 1139767 (D.D.C. Apr. 27, 2026). Thus, the court does not view it as an irrelevant theory, and it may be instructive in determining whether the *Zafiro* standard for severance is met. The *White* court denied severance and, in doing so, rejected application of the "second prosecutor" theory, after describing the case before it as "plain and simple blame-shifting." 2026 WL 1139767, at *22 (citation omitted). But here, as already discussed, the ways in which Reburn intends to defend his case—which require painting Hayes as a manipulative co-defendant with a history of weaving complex lies—is a far cry from simply saying that a co-defendant is more culpable or was the one who shot the victim, as was the case in *White*. And regardless of whether the court refers to it as a "second prosecutor" theory, the court sees a grave risk that Reburn's attacks on Hayes will prejudice her right to remain silent and to hold the United States to its burden of proof, which are specific trial rights. *Cf. Zafiro*, 506 U.S. at 539 (setting forth the standard of "serious risk of prejudice to a specific trial right").

Although there are some factual distinctions,[3] the trial court's reasoning in *United States v. Andrews*, Criminal No. 1:12CR100, 2013 WL 6230450, at *7 (N.D.W. Va. Nov. 26, 2013), is also apt here. There, the court granted the motion to sever, relying in part on the fact that a joint trial would require the court "to choose between restricting Andrews' defense or permitting Andrews' attacks on Bellinger" and "either option results in prejudice." *Id.* at *6. The *Andrews*

[3] *Andrews* also involved an anticipated problem under *Bruton v. United States*, 391 U.S. 123 (1968), with the confession of a nontestifying co-defendant implicating the other defendant, and the potential for prejudice from one non-capital defendant being tried before a death-qualified jury, although the *Andrews* court recognized that the Supreme Court had rejected this second rationale, without more, as a basis for severance. *Andrews*, 2013 WL 6230450, at *6 (citing *Buchanan v. Kentucky*, 483 U.S. 402, 415–20 (1987)). Those problems do not exist here.

court also discussed the potential for prejudice from the antagonistic defenses "thrusting defense counsel into the role of prosecutor, thereby reducing the government's burden." *Id.* Those same concerns exist here.

In these factual circumstances, the court concludes that this case satisfies the test in *Zafiro*. Specifically, there is a "serious risk that a joint trial would . . . compromise a trial right of one of the defendants." A joint trial would either risk Reburn's right to present a defense or Hayes's right to remain silent and hold the prosecution to its burden, or it "would prevent the jury from making a reliable judgment about guilt or innocence."

In concluding that severance is appropriate, the court has considered the efficiencies of a joint trial, especially where, as here, the parties anticipate a four-week trial. Hayes argues—and it is true—that separate trials may decrease the number of evidentiary objections, which could shorten the trial. *See Andrews*, 2013 WL 6230450, at *7 (recognizing same); *United States v. Kruckel*, No. 92-cr-611, 1993 WL 765648, at *8 (D.N.J. Aug. 13, 1993) (same). The court agrees with the United States, though, that any decrease in the number of objections is unlikely to *significantly* shorten either trial. Instead, separate trials will burden the United States, the court, jurors, witnesses, and perhaps especially the victims. *See United States v. Chavez*, 894 F.3d 593, 605 (4th Cir. 2018) (discussing the strain on judicial and community resources of separate trials). As suggested at the court's last hearing, some steps can be taken to alleviate some of those inefficiencies, such as allowing for recorded testimony of out-of-country witnesses during the first trial that can be used at the second, thereby obviating the need for them to return to testify. But some burdens and inefficiencies will occur with separate trials.

Regardless of the difficulties and inefficiencies of separate trials, the court cannot favor efficiency over fair trials for the defendants. *Kotteakos*, 328 U.S. at 773. To summarize the

court's concerns, the court would be tasked with walking a very thin and high tightrope at a joint trial. It would have to ensure that Reburn is able to put on all admissible and relevant evidence in support of his defense (much of which would be prejudicial to Hayes), while not infringing her right to a fair trial.[4] The court believes that her right to remain silent may well be compromised by a joint trial, particularly if there is little she can do to defend herself against the evidence Reburn intends to offer without taking the stand herself.

And the court also has concerns about the substance of the "second prosecutor" theory. On the facts here, there is a serious risk that Hayes's right to hold the government to its burden of proof would be jeopardized by Reburn's co-existent right to introduce admissible evidence against her that the government is not seeking to introduce. And while limiting and curative instructions can often be effective in limiting or curtailing any prejudice, the court concludes that the cumulative effect of the admissible evidence Reburn will offer in his defense would be incredibly difficult, if not impossible, for the jury to set aside when considering Hayes's guilt.

While not dispositive and while it would reach the same decision regardless, the court has also considered the very significant penalties for the offenses if defendants are convicted. In particular, the court has already determined that the appropriate penalty for the conspiracy to kill witnesses is mandatory life imprisonment. *Cf. Gregg v. Georgia*, 428 U.S. 153, 187 (1976) (noting, in a capital case that "[w]hen a defendant's life is at stake, the Court has been particularly sensitive to ensure that every safeguard is observed"). Aside from the death penalty, which is admittedly different, *see id.*, a mandatory term of life imprisonment is the most severe

[4] To be clear, the court is not holding that all the evidence identified by Reburn would be admissible, even in a case in which he is tried separately. But certainly, some of that evidence (including significantly prejudicial evidence) will be admissible. And that evidence alone causes grave concern for the court.

sentence a defendant can face. That, too, weighs in favor of severing to ensure that each defendant receives a fair trial.

For the stated reasons, the court will grant the motions to sever and sever the defendants' trials.

**C. Hayes's Trial Will Be First**

Having made the decision to sever the two cases for trial, "the court has 'broad discretion' over corresponding decisions such as the order or sequence of severed trials." *United States v. Walker*, No. 7:24-CR-00012, 2024 WL 5165834, at *6 (W.D. Va. Dec. 18, 2024) (quoting *United States v. McCabe*, 103 F.4th 259, 274–75 (4th Cir. 2024)); *see also United States v. Odom*, 888 F.2d 1014, 1018 (4th Cir. 1989) (explaining that which defendant to sever and which defendant must wait for a subsequent trial is within the district court's discretion). Although Reburn volunteered to take the first trial date, the court will retain Hayes as the primary defendant in this case and will keep her case set for the February 1, 2026 trial date.

There are several reasons that this trial order is preferable. First, most of the prejudicial evidence that concerns the court is likely to be admitted in Reburn's trial, not in Hayes's. The possibility of tainting the jury pool by any news coverage of that information, making it more difficult to select an impartial jury for the second defendant, would be lessened if it is not presented in the first trial.

Further, Hayes was named as the first defendant in the indictment, and based on the information before the court and forecasted evidence, it appears that Reburn is alleged to have been the last person to join either alleged conspiracy. In both *Walker* and *McCabe*, the courts determined that the "primary defendant" in the indictment should be tried first. *Walker*, 2024 WL 5165834, at *6; *McCabe*, 103 F.4th at 269–70.

Lastly, the decision is supported by some practical realities. Most notably, the court recently granted Reburn's motion to be transported for further medical testing related to possible physiological reasons for his alleged gullibility or impaired judgment. (Dkt. No. 167.) The court does not know whether his medical appointment has yet been scheduled, but holding his trial second should allow ample time for that testing to be completed and any other necessary reports to be prepared or motions filed.

## III. ORDER AND CONCLUSION

For the foregoing reasons, it is hereby ORDERED that both defendants' motions to sever (Dkt. Nos. 114, 151) are GRANTED, and the court hereby SEVERS the trials of Reburn and Hayes. The court will try Hayes first on the current trial setting, and it will try Reburn as soon thereafter as possible.

In light of its ruling, the court further ORDERS that counsel for the United States and counsel for Reburn shall contact the court's courtroom deputy clerk, Kelly Anglim, to schedule Reburn's trial. If they believe that a revised or new scheduling order should be entered specifically for his case, they shall propose one to the court.

The court further ORDERS that the parties confer about the following issues and file a joint notice, not later than seven days after entry this order, as to their proposals for proceeding. If there are disagreements about any of the issues, they should identify those in the notice. Along with any other issues any party wishes to raise for the court's consideration related to severance, the notice shall address:

1. Whether any of the currently pending motions (or any portion of them) are moot in light of the severance;

2. Whether the court should hold a separate pretrial conference closer in time to Reburn's trial to address motions relevant only to his trial; and, if so, which of the already-filed motions, if any, should be held in abeyance pending that separate pretrial conference;
3. A list of the motions the court should hear at the December 3, 2026 status conference;
4. For the government's 404(b) motion (Dkt. No. 130), which the court will hear at least in part at the December 3, 2026 conference, a chart or list of each item or category on which a ruling is sought, to the extent those rulings remain necessary for Hayes's trial (as opposed to only Reburn's trial), and a proposed briefing schedule for the same; and
5. Whether the parties can agree on the use, in Reburn's trial, of recorded testimony from any witnesses or victims who appear at Hayes's trial.

Entered: November 5, 2026.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
Chief United States District Judge